RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES R. HAGY, III,

        *Plaintiff-Appellee,*

PATRICIA R. HAGY,

        *Plaintiff,*     No. 17-3696

   *v.*

DEMERS & ADAMS; DAVID J. DEMERS,

        *Defendants-Appellants,*

GREEN TREE SERVICING, LLC; KEVIN WINEHOLD;
PROASSURANCE CASUALTY COMPANY,

        *Defendants.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:11-cv-00530—Terence P. Kemp, Magistrate Judge.

Argued: January 31, 2018

Decided and Filed: February 16, 2018

Before: SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Adam J. Bennett, COOKE DEMERS LLC, New Albany, Ohio, for Appellant. Edward A. Icove, ICOVE LEGAL GROUP, LTD., Cleveland, Ohio, for Appellee. **ON BRIEF:** Adam J. Bennett, David J. Demers, COOKE DEMERS LLC, New Albany, Ohio, for Appellant. Edward A. Icove, ICOVE LEGAL GROUP, LTD., Cleveland, Ohio, Kristen Finzel Lewis, SOUTHEASTERN OHIO LEGAL SERVICE, New Philadelphia, Ohio, for Appellee.

---

**OPINION**

---

SUTTON, Circuit Judge.   David Demers, an attorney, sent a letter on behalf of his client to the attorney for James and Patricia Hagy.   The letter indicated that the Hagys would not have to pay the balance on their loan and that the lender would not pursue any other remedies against the Hagys.   That seemed like good news for the Hagys.   Little did Demers know that this epistle would lead to six years (and counting) of litigation against him and his firm for violating the Fair Debt Collection Practices Act.   Because the complaint failed to identify a cognizable injury traceable to Demers (and his firm) and because Congress cannot override this baseline requirement of Article III of the U.S. Constitution by labeling the violation of *any* requirement of a statute a cognizable injury, we must dismiss the appeal and, with it, the underlying case.

I.

In 2002, James and Patricia Hagy took out a loan to purchase a mobile home and some property on which to park it.   In 2010, they defaulted on their loan payments.   Green Tree Servicing, a mortgage servicing company, initiated foreclosure proceedings against the Hagys.

Patricia Hagy called the law firm that represented Green Tree, the star-crossed Demers & Adams, with hopes of settling the claim.   It worked.   On June 8, 2010, David Demers sent the Hagys a letter containing a Warranty Deed in Lieu of Foreclosure.   "In return for [the Hagys] executing the Deed," the letter said, "Green Tree has advised me that it will waive any deficiency balance."   R. 18-3 at 1.   The Hagys executed the Deed on June 24, 2010.   And on June 30, 2010, Demers sent another letter, this time to the Hagys' attorney, James Sandy.   That letter confirmed receipt of the executed Deed and reaffirmed that "Green Tree will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral."   R. 18-5 at 1. Three weeks later, Green Tree dismissed the foreclosure complaint against the Hagys.

What seemed to end the dispute did not.

Green Tree began calling the Hagys to collect the debt that they no longer owed. James Hagy protested that he "didn't have to pay anything else" in light of the Deed. R. 67 at 26. Green Tree realized it had made a mistake and agreed that the Hagys owed nothing more.

In 2011, the Hagys sued Green Tree and one of its employees (Kevin Winehold), and Demers and his law firm (Demers & Adams), in federal court. They claimed that the phone calls and letters violated the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act.

Green Tree and Winehold, the phone callers, moved to stay the proceedings and compel arbitration. The district court granted the motion, and this set of contestants eventually resolved their dispute through arbitration.

Demers and his law firm, the letter writers, moved to dismiss the claims against them. The court dismissed the Hagys' federal claim based on the June 8 letter because it was time-barred. But it refused to dismiss the Hagys' Ohio claims based on the June 8 letter as well as their federal and Ohio claims based on the June 30 letter.

After discovery, Demers and the Hagys each moved for summary judgment. In 2013, the district court ruled for the Hagys, reasoning that Demers' June 30 letter to Sandy "fail[ed] to disclose" that it was a "communication . . . from a debt collector" in violation of the federal law. 15 U.S.C. § 1692e(11). Believing that the Ohio law incorporates the federal requirements, the court ruled that Demers also violated the Ohio statute by failing to make the § 1692e(11) disclosure in the June 8 and June 30 letters and by failing to provide the notice required by § 1692g(a) "[w]ithin five days [of] the initial communication with [the] consumer." R. 95. All told, the court awarded the Hagys $1,800 in statutory damages, $312 in costs, and $74,196 in attorney's fees against Demers and his law firm.

Over the next three years, the Hagys (successfully) filed two supplemental complaints and Demers (unsuccessfully) tried to appeal the district court's non-final summary judgment decision. Meanwhile, Demers asked the district court to reconsider its decision in light of *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The district court refused. Only in 2017, after James Hagy

settled the arbitration with Green Tree and agreed to dismiss the supplemental complaints, did the district court issue a final order.

Demers the man and Demers the law firm appealed.

## II.

They argue that (1) the district court lacked jurisdiction over the dispute because the Hagys did not have standing to assert their federal and state claims; (2) the June 30 letter to the Hagys' attorney did not violate the federal law because it was not a "communication with the consumer," 15 U.S.C. § 1692e(11); (3) they did not violate the Ohio law because it does not incorporate the requirements of the federal law and (under Ohio law) this case did not involve a "consumer transaction" or a "supplier," Ohio Rev. Code §§ 1345.01, 1345.02; and (4) the district court abused its discretion by awarding disproportionate attorney's fees.

There is plenty to debate about the merits of this case. The federal circuits disagree about whether provisions like § 1692e(11) cover communications with a consumer's attorney. Some say they do not. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934–39 (9th Cir. 2007) (per curiam); *Kropelnicki v. Siegel*, 290 F.3d 118, 127–28 (2d Cir. 2002). Some say they do. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1271–72 (11th Cir. 2016); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232–33 (4th Cir. 2007). Some take a middle position. *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 573–74 (8th Cir. 2015); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773–75 (7th Cir. 2007).

We have yet to take a position, and our stand on the issue will have to wait. Article III of the U.S. Constitution does not authorize federal courts to decide theoretical questions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 & n.5 (1998). It extends the "judicial Power" only to concrete "Cases" and "Controversies." U.S. Const. art. III, § 2. One telltale of a cognizable dispute suitable for resolution by the federal courts is that the parties have standing to bring it. The "irreducible constitutional minimum" for standing requires the Hagys to show (1) a particular and concrete injury (2) caused by Demers and (3) redressable by the courts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A claimant bears the burden of establishing

standing and must show it "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  That did not happen.

*Federal claim.*  The Hagys filed their federal claim under the Fair Debt Collection Practices Act.  Causes of action classically require a showing of duty, a breach of duty, and damages.  The Act creates a cause of action that has all three components:  (1) Duty—a debt collector must include a required disclosure, usually to the effect "that the communication is from a debt collector," in communications to a consumer; (2) breach of duty—any debt collector who fails to comply with that requirement is liable to the consumer; and (3) damages—that consumer may recover actual damages and any additional damages up to $1,000 from the non-compliant debt collector.  15 U.S.C. §§ 1692e(11), 1692k(a).

In one sense, it seems easy to say that the Hagys have standing to bring a claim against Demers under the Act with respect to his June 30 letter.  The complaint makes allegations with respect to each element of the cause of action:  (1) Demers sent a letter to the Hagys about a debt implicating a duty established by the Act; (2) the letter failed to include the required disclosure; and (3) the Hagys seek statutory damages.  These kinds of allegations usually eliminate any doubts about Article III standing and usually allow the parties and the court to move on to the merits.

But usually is not always.  What makes this case different is that Demers challenges Congress's *authority* to create this injury—to create an injury in fact that involves no harm of any sort that could satisfy the injury-in-fact requirements of Article III.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546–48 (2016).

The relevant conduct is Demers' June 30 letter to the Hagys' lawyer, James Sandy. Demers sent the letter to confirm that he had received the Hagys' signed Deed and that Green Tree would no longer require the Hagys to pay their deficiency balance.  In full, it said:

Dear Mr. Sandy:

This letter is in follow up to our conversation of Monday, June 28, 2010 wherein we discussed the above referenced matter.

Pursuant to our conversation, I informed you that we have received the executed Warranty Deed in Lieu of Foreclosure signed by the Hagy[s].  Furthermore, you

inquired as to should a deficiency balance be realized after the sale of the collateral would Green Tree pursue Mr. & Mrs. Hagy for the amount of the deficiency. I have been informed by my client that in return for Mr. & Mrs. Hagy executing the Warranty Deed in Lieu of Foreclosure Green Tree will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral.

I believe this letter satisfies any and all of your concerns.

Should you have any questions with respect to this matter, please do not hesitate to contact me.

Very truly yours,

David J. Demers

R. 18-5 at 1.

James Hagy admits that what Demers said in his letter "turned out to be true." R. 67 at 27. Far from causing the Hagys any injury, tangible or intangible, the June 30 letter gave them peace of mind, and they have never testified otherwise. At this point in the case, no one plausibly argues (or even alleges) that the Hagys suffered an actual injury and damages from the letter. Demers had nothing to do with the true source of their anxiety—Green Tree's phone calls seeking to collect the deficiency weeks after the Hagys executed the Deed, which could be injury-causing.

That leaves the possibility that Congress's creation of a statutory injury and damages suffices to satisfy Article III's standing imperative. Congress created a cause of action—and injury—that covers Demers' failure to disclose in his June 30 letter "that the communication [wa]s from a debt collector." 15 U.S.C. § 1692e(11). But it is not that simple, as the Supreme Court recently established in *Spokeo*. To satisfy the injury in fact requirement, the Hagys must point to some harm other than the fact of "a bare procedural violation." *Spokeo*, 136 S. Ct. at 1550. Not all procedural violations, not even all inaccuracies, cause real harm. "It is difficult to imagine," for example, "how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

The Fair Debt Collection Practices Act protects consumers from abusive debt collection practices. And § 1692e(11)'s disclosure requirement serves that purpose. *Fed. Home Loan*

*Mortg. Corp. v. Lamar*, 503 F.3d 504, 508, 512 (6th Cir. 2007). But the Hagys have not shown, in truth have not even tried to show, that this failure to disclose caused them any actual harm beyond that "bare procedural violation." As they argued in their briefs and as they reiterated at oral argument, the letter was "hurtful" only "because it did not provide the [required] notice." Oral Arg. at 18:19–18:46. They do not say that the non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm. On this record, it is difficult to see—and we cannot see—how the June 30 letter did anything other than help the Hagys. When Green Tree came calling, in point of fact, James Hagy relied on the June 30 letter to refuse to pay the deficiency balance. The letter was good news when it arrived, and it became especially good news when Green Tree persisted in trying to collect a no-longer-collectible debt.

The district court thought a bare violation of § 1692e(11) sufficed, even after *Spokeo*. "Congress," it said, "has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." R. 164 at 7 (quoting *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (per curiam)). As it happens, this court recently considered and rejected this theory and rejected any reliance on *Church*—all, to be fair, after the district court's decision. *See Lyshe v. Levy*, 854 F.3d 855, 860–61 (6th Cir. 2017). At this point, it is not even clear whether the *Church* theory remains good law in the Eleventh Circuit. *See Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002–03 (11th Cir. 2016). We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury. Although Congress may "elevate" harms that "exist" in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is. *Spokeo*, 136 S. Ct. at 1548–49.

Today's case illustrates the necessity of this limit. It's not just that this letter gave the Hagys everything they wanted. They insist that an even better letter—"Attached is a thousand dollars in cash, no strings attached, no response needed"—would cause a concrete injury if it omitted the required disclosure. Oral Arg. at 18:50–19:30. That approach, if accepted, would

leave Congress as the sole author of any limits on the Article III judicial power to hear cases and controversies.

We appreciate that Congress has some leeway "to define injuries and articulate chains of causation." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring). And we appreciate that, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo*, 136 S. Ct. at 1549. But it did not purport to use that judgment or leeway here. All it did was require debt collectors to disclose in their "communications [with consumers] that the communication is from a debt collector" and entitle individuals to sue for "fail[ures] to comply" with that requirement—no matter whether the letter sought to collect a debt or release one. 15 U.S.C. §§ 1692e(11), 1692k(a). Nowhere in the Act (or for that matter the legislative record) does Congress explain why the absence of such a warning *always* creates an Article III injury. As we have said before and repeat here, "standing is not met simply because a statute creates a legal obligation," as in § 1692e(11), "and allows a private right of action for failing to fulfil this obligation," as in § 1692k(a). *Lyshe*, 854 F.3d at 860; *see also Wall v. Mich. Rental*, 852 F.3d 492, 495 (6th Cir. 2017); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016).

Congressional leeway cannot mean judicial abdication. Broad though Congress's powers may be to define and create injuries, they cannot override constitutional limits. It may be true, for example, that it is difficult to think of "property" without law. In truth, there may be no such thing as "property" without law, and the law that creates property interests often will be legislative. But neither Congress nor a state legislature may define "private property" in a way that eliminates an otherwise cognizable claim under the Takings Clause of the Fifth (and Fourteenth) Amendment. *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1942–45 (2017). And Congress may not make a First Amendment limit on its power go away by announcing that flag burning is not "speech." *See Texas v. Johnson*, 491 U.S. 397, 402–06 (1989).

These limits are essential when it comes to preserving structural boundaries. To ensure that Congress does not eliminate one of the ultimate safeguards of liberty—that the National Legislature does not have a general police power—the federal courts do not permit Congress to label anything it wishes as "Commerce . . . among the several States." *See United States v.*

*Lopez*, 514 U.S. 549, 563 (1995) (noting the absence of legislative findings "that the [possession of guns near schools] substantially affected interstate commerce"). Congress may not use its enforcement power under the Fourteenth Amendment to redefine the "free exercise" of religion however it wishes and in the process intrude on the States' existing powers in the area. *See City of Boerne v. Flores*, 521 U.S. 507, 519–20, 535–36 (1997). So too with the horizontal separation of powers at the national level. Congress may not enact a law that eliminates Article III safeguards that permit federal courts only to use the "judicial Power" to hear "Cases" and "Controversies." U.S. Const. art. III, § 2. That's just what we take *Spokeo* to mean when it said that "Congress cannot erase Article III's standing requirement." 136 S. Ct. at 1547–48.

It's difficult, we recognize, to identify the line between what Congress may, and may not, do in creating an "injury in fact." Put five smart lawyers in a room, and it won't take long to appreciate the difficulty of the task at hand. But what spares us the task of precisely drawing that line, and what makes this case relatively easy, is that Congress did not even try to show that the absence of this warning would *always* create an injury. All we need say today is that Congress may not say that *anything* is an injury, and by saying so expect the federal courts to agree. Just as there must be *some* limits on Congress's power to regulate commerce, *see NFIB v. Sebelius*, 567 U.S. 519, 548–55 (2012); *United States v. Morrison*, 529 U.S. 598, 608, 613 (2000); *Lopez*, 514 U.S. at 565–66, there must be some limits on Congress's power to create injuries in fact suitable for judicial resolution. Because Congress made no effort to show how a letter like this would create a cognizable injury in fact and because we cannot see any way in which that could be the case, we must dismiss this claim for lack of standing.

*State-law claims.* The Hagys maintain that, even if we lack jurisdiction over their federal claim, we may still exercise supplemental jurisdiction over their state-law claims. *See* 28 U.S.C. § 1367(c)(3). But the doctrine of supplemental jurisdiction does not alter Article III's standing requirements. *See DaimlerChrysler*, 547 U.S. at 351–53. And those requirements apply to state-law claims in federal court. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999); 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.14 (3d ed. 2017) ("Of course state rules that recognize standing need not be honored [in federal courts] if Article III requirements are not met."). For the same reason that the Hagys lack standing to

bring the federal claim, they lack standing to bring the state-law claims, which rely on incorporating the federal law wholesale. Demers' June 8 letter, just like his June 30 letter, gave the Hagys good news; Green Tree's ill-considered phone calls later on created the headache. Once again, the Hagys' claims against Demers stand on "bare procedural violation[s]" of the federal law. *Spokeo*, 136 S. Ct. at 1550.

For these reasons, we reverse the district court's decision finding subject matter jurisdiction, vacate its orders entering summary judgment for the Hagys and awarding damages, fees, and costs, and dismiss this case for lack of jurisdiction.