**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 19a0582n.06**
**No. 18-3709**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONALD and CYNTHIA LANTON, | ) | **FILED**<br>Nov 26, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| OCWEN LOAN SERVICING, LLC, et al., | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:     BOGGS, MOORE, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge.  Plaintiffs Ronald and Cynthia Lanton appeal the district court's grant of summary judgment in favor of Defendants Ocwen Loan Servicing, LLC and U.S. Bank National Association.  As explained below, we affirm the district court's opinion in part and vacate it in part.

I

On September 8, 1998, Ronald and Cynthia Lanton ("the Lantons") executed a promissory note and mortgage in favor of Heartland Home Finance, Inc. ("Heartland") for the purpose of refinancing their residential property located in Xenia, Ohio.  The note and mortgage did not require or authorize Heartland to escrow amounts for payments of real-estate taxes and insurance.  In early 2000, Litton Mortgage Servicing Center, Inc. ("Litton") began servicing the note and the

mortgage. U.S. Bank National Association ("U.S. Bank") is the current owner and holder of the note and mortgage.

On or about February 8, 2002, Cynthia Lanton filed for relief under Chapter 13 of the United States Bankruptcy Code. While Cynthia was under bankruptcy protection, mortgage payments for their property were made to U.S. Bank by the Trustee in Bankruptcy in the amount of $454.18 per month. Cynthia completed her repayment plan and received a discharge from the bankruptcy court in June 2007.

On April 18, 2008, Litton sent a letter to the Lantons, notifying them that Litton had paid $11,536.99 in tax and insurance expenses incurred between 2001 and 2006. Litton advised the Lantons that, to ensure repayment of the costs thus advanced, their mortgage payments would be increased to $591.53 per month beginning June 14, 2008 and lasting 84 months altogether. The Lantons agreed, and paid the increased mortgage payment. Although they maintained that several payments were improperly applied to their account, the Lantons continued to make regular and complete payments pursuant to the adjusted schedule.

On September 14, 2011, Ocwen Loan Servicing, LLC ("Ocwen") took over servicing of the Lantons' loan from Litton. In 2014, Ocwen reviewed the account and determined that the escrow advance was not going to be paid in full over the original 84 months that Litton had anticipated.[1] On December 4, 2014, Ocwen sent a letter to the Lantons advising them that their mortgage payment would be increased by $161.03 per month to cover these deficiencies.

Meanwhile in 2014, Ms. Lanton and Blue Ocean Ambulette Services, LLC ("Blue Ocean"), a small business owned wholly by Ms. Lanton, applied for and were denied a small-business loan, allegedly because a credit report, created by former Defendant Equifax Information Services LLC

---

[1] Specifically, Ocwen claims it was forced to make an additional $1,932.27 in property tax and insurance payments.

("Equifax"), stated that Ms. Lanton "was under Chapter 7 bankruptcy protection." This information was allegedly based upon information provided by Ocwen to Equifax. Ms. Lanton claimed that she also lost business opportunities because she was unable to finance the purchase of additional equipment, such as an ambulette, for her business.

On August 3, 2015, the Lantons mailed a qualified written request ("QWR") to Ocwen under the Real Estate Settlement Procedures Act ("RESPA"). The QWR included a statement that the payments made during Ms. Lanton's bankruptcy and thereafter, including those applied to the alleged escrow deficiency, were misapplied. The Lantons requested that Ocwen correct the account by properly applying those payments. Additionally, the Lantons stated that the 84-month escrow shortage agreement was assessed in error and contained improper charges. Because of this, the Lantons disputed all fees, charges, corporate advances, the principal balance, interest, and escrow amounts charged on the account.

By a letter dated August 14, 2015, Ocwen responded to the QWR. Ocwen informed the Lantons that it could not respond to their request for information about the origination of their loan, as Ocwen was not involved in the loan's origination. Ocwen also stated that it is "obligated to service the loan in accordance with the terms of the Notes and Mortgage signed by the borrower(s). A review of the Note indicates that the borrower's [*sic*] (Ronald Lanton and Cynthia Lanton) have signed it and [are] responsible for the debt. As such, the above loan is valid." Ocwen ultimately provided the Lantons with the loan payment history from August 2011 (when it began servicing the loan) but never provided the payment history from when the loan was being serviced by Litton.

On October 12, 2015, the Lantons commenced this action in the district court. The Lantons ultimately brought suit against Ocwen, U.S. Bank, and other defendants alleging several causes of

action, including (1) violations of the Real Estate Settlement Procedures Act against Ocwen, (2) violations of the Federal Debt Collection Practices Act ("FDCPA") against Ocwen and variously against U.S. Bank, and (3) state-law breach of contract against Ocwen and U.S. Bank. In her deposition, Cynthia testified as follows:

> Q.    Okay. So I want to make a clear record, so I am going to repeat the question, if that's okay.
>
>    Is it your testimony today that the only actual damages that you are seeking redress for in this litigation is the denial of the loan or loans for the purchase of the ambulette?
>
> A.    Yes.

Following discovery, the Lantons moved for partial summary judgment as to liability on the RESPA and FDCPA claims, and Defendants moved for summary judgment on all claims. On June 26, 2018, the district court granted Defendants' motion for summary judgment on the Lantons' claims and dismissed the Lantons' motion for partial summary judgment. The Lantons appealed to this court.

II

This court reviews the district court's order granting summary judgment "under a de novo standard of review, without deference to the decision of the lower court." *See Brannam v. Huntington Mortgage Co*., 287 F.3d 601, 603 (6th Cir. 2002) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court's obligation is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

This court reviews the district court's refusal to exercise pendent jurisdiction over appellants' state-law breach-of-contract claim under an abuse-of-discretion standard. *See Moon v.*

No. 18-3709, *Lanton, et al., v. Ocwen Loan Servicing, LLC, et al.*

*Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). An abuse of discretion occurs where the district court "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006) (citation omitted).

III

RESPA allows an individual to recover for a violation of its terms as follows:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) . . . In the case of any action by an individual, an amount equal to the sum of—
> (A) any actual damages to the borrower as a result of the failure; and
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f). The statute therefore requires a plaintiff to prove "actual damages" relating to any alleged violation of RESPA.

In granting summary judgment for the Defendants, the district court explained that, because RESPA is a consumer-protection statute, damages "related to a business endeavor are not recoverable." Because Mrs. Lanton testified in her deposition that "the only damages [the Lantons] are seeking redress for in this litigation is the denial of the loan or loans for the purchase of the ambulette" for Blue Ocean, the district court held that "there is undisputed evidence of record that the only damages sought are business-related" and that therefore "Plaintiffs have no evidence of damages recoverable under RESPA."[2]

We find that the district court should not have relied on that evidence alone in coming to its holding on actual damages. Ms. Lanton, as a layperson, cannot be expected to have known the

---

[2] Because the Lantons do not challenge the district court's characterization that damages related to a business endeavor would not be recoverable under RESPA, we do not address that argument here.

legal meaning of "actual damages." Regardless, elsewhere in that same deposition she testified that she incurred damages in the form of an "exceptionally high mortgage balance" and "the interest that has accrued with the misapplied or non-applied payments." Moreover, this circuit has held that, under some circumstances, the cost of preparing a QWR that is inadequately responded to may sometimes constitute actual damages. *See Marais v. Chase Home Finance LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (directing the district court to "consider th[e] argument" that "costs [the plaintiff] incurred associated with preparing her QWR . . . became actual damages when Chase ignored its statutory duties to adequately respond").

We emphasize that we pass no judgment today on the strength of the Lantons' underlying RESPA claim. It is certainly possible that, even considering the entirety of the record, the Lantons still have not pled actual damages sufficient to survive summary judgment. But being unable to articulate the legal nuances of what damages flow from a legal claim does not make those damages disappear, should they exist. We therefore hold that the district court erred by making Ms. Lanton's statement from her deposition regarding actual damages dispositive on the issue. Accordingly, we instruct the district court to consider the entirety of the record in determining whether the Lantons' RESPA claim survives summary judgment.

Thus, we VACATE section IV.B. of the district court's summary-judgment decision and REMAND to the district court to proceed as directed above.

IV

Next, the Lantons claim the district court also erred in granting summary judgment on their FDCPA claim against Ocwen. On this claim, however, the district court ruled correctly.

The Lantons insist that the FDCPA is a "strict liability" statute and that the Lantons need not show actual damages to prevail. Based on that understanding, the Lantons' summary-judgment

motion simply sought "actual damages to be determined at trial," as well as statutory damages and attorney's fees.

We clarified in *Hagy v. Demers & Adams*, however, that a plaintiff may not recover statutory damages under the FDCPA absent a showing of actual harm suffered. 882 F.3d 616, 621 (6th Cir. 2018) (noting that, in the context of the FDCPA, "[t]o satisfy the injury in fact requirement, the [plaintiffs] must point to some harm other than the fact of a bare procedural violation") (citation and internal quotation marks omitted). Even if the plaintiffs have plausibly alleged actual damages relating to their FDCPA claim, they have failed to provide enough evidence to overcome summary judgment on the FDCPA claim.[3] Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Ocwen on the FDCPA claim.

V

Finally, the Lantons challenge the district court's decision not to exercise supplemental jurisdiction over their claim for breach of contract against Ocwen and U.S. Bank. "[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citations omitted). Federal district courts should maintain supplemental jurisdiction over state-law claims only where "the interests of judicial economy and the avoidance of multiplicity of litigation" require it. *Moon*, 465 F.3d at 728 (citation omitted).

Here, the district court dismissed the Lantons' state-law breach-of-contract claim because it had granted summary judgment to the Defendants on all claims arising under federal law. Because we have directed the district court to consider more closely the Lantons' RESPA claim,

---

[3] Indeed, as Ocwen points out in its briefing, "the 'actual damages' Appellants claim under RESPA—increased interest charges due to failure to correct an allegedly incorrect balance and costs of preparing and sending a QWR—have no causal connection to an alleged *FDCPA* violation."

however, this is no longer the case. Should the district court find on reconsideration that the Lantons' RESPA claim survives summary judgment, it should consider whether to exercise supplemental jurisdiction over the breach-of-contract claim in the interests of judicial economy. Accordingly, we also VACATE section IV.D. of the district court's summary-judgment decision pending further consideration of the Lantons' RESPA claim.