J-A02007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY GENNOCK AND JORDAN BUDAI, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| KIRKLAND'S INC. | : : : | No. 462 WDA 2022 |
| Appellant | : | |

Appeal from the Order Entered August 20, 2020
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  11119 OF 2019

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED:  May 16, 2023**

Kirkland's Inc. ("Kirkland") appeals from the order entered on August 20, 2020, determining that Ashley Gennock and Jordan Budai, individually and derivatively on behalf of all similarly situated (collectively, "Plaintiffs"), had standing to assert a cause of action based on Kirkland's violation of the federal Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g).[1] We reverse the order and dismiss Plaintiffs' complaint.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1] The trial court certified the order for interlocutory appeal pursuant to 42 Pa.C.S. § 702(b).

By way of background, Congress enacted FACTA in 2003, as an amendment to the Fair Credit Reporting Act, to prevent identity theft. ***See Kamal v. J. Crew Grp., Inc.***, 918 F.3d 102, 106 (3d Cir. 2019).[2] To achieve this, FACTA requires, in relevant part, that debit and credit card numbers be truncated on printed receipts, as follows:

**(g) Truncation of credit card and debit card numbers**

**(1) In general**

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

**(2) Limitation**

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

15 U.S.C. § 1681c(g). FACTA provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the

---

[2] We note that decisions from the Third Circuit Court of Appeals, whether interpreting federal or state law, do not bind our Courts. ***See Martin v. Hale Prod., Inc.***, 699 A.2d 1283, 1287 (Pa.Super. 1997). Rather, "[d]ecisions of the federal courts lower than the United States Supreme Court possess a persuasive authority." ***Id***. (cleaned up). We consider ***Kamal v. J. Crew Grp., Inc.***, 918 F.3d 102 (3d Cir. 2019), accordingly.

failure" as well as (2) the costs and attorney fees for the successful action. *See* 15 U.S.C. § 1681o(a). To remedy willful violations, FACTA provides for actual damages or statutory damages, plus punitive damages and attorneys' fees. *See* 15 U.S.C. § 1681n(a).

Between February 18 and April 8, 2017, Plaintiffs patronized Kirkland retail stores and made purchases with their debit and/or credit cards. Each time the Plaintiffs received a paper receipt, it displayed the first six and the last four digits of the credit and/or debit cards used for payment. Plaintiffs filed a class action federal suit against Kirkland, alleging that Kirkland had willfully violated FACTA. Plaintiffs did not allege that the violation resulted in their identities being stolen or their card numbers being misappropriated. Instead, they argued that the FACTA violation placed them at greater risk of such an occurrence. The federal district court, applying the holding in *Kamal*, *supra* at 117, that "a bare procedural violation. . . does not create Article III standing[,]" dismissed Plaintiffs' complaint. *See Gennock v. Kirkland's, Inc.*, No. CV 17-454 (W.D.Pa. Oct. 21, 2019) (adopting Report and Recommendation, 9/24/19).

Thereafter, Plaintiffs transferred the complaint to state court pursuant to 42 Pa.C.S. § 5103. Kirkland filed preliminary objections alleging that Plaintiffs lacked standing and failed to allege facts sufficient to establish a willful violation of FACTA. Simultaneously, a nearly identical case brought by Plaintiffs and Andrea Sciola against Country Fair, Inc. ("Country Fair"), was pending before the same trial court, with Country Fair also challenging the

plaintiffs' standing therein. Plaintiffs, Kirkland, Ms. Sciola, and Country Fair agreed to be bound by a joint ruling as to standing in both cases. The trial court initially found that the plaintiffs in Country Fair's case had statutory standing under FACTA. However, after granting Country Fair's motion for reconsideration, the court determined that FACTA did not confer statutory standing, but plaintiffs had nonetheless pled sufficient facts to attain standing under Pennsylvania's traditional standing principles. *See* Trial Court Opinion ("Country Fair"), 8/20/20, at 8. Based upon the reasoning set forth in the opinion overruling Country Fair's preliminary objections, the trial court overruled Kirkland's preliminary objections. *See* Order of Court, 8/20/20.

This timely appeal followed.[3] Kirkland presents a single issue for our consideration: "Whether the trial court erred when it held that Plaintiffs had standing to assert a violation of [FACTA], when the only harm they alleged was a bare technical violation of the statute and where no actual harm, or substantial risk of harm, was alleged?" Kirkland's brief at 6.

We review orders overruling preliminary objections "to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Am. Interior Constr. &*

---

[3] Although this Court initially denied Kirkland's petition for permission to appeal, we subsequently granted the petition following the filing of a motion for reconsideration. We note that the trial court did not order Kirkland to file a concise statement pursuant to Pa.R.A.P. 1925(b), and the trial court did not submit a Rule 1925(a) opinion.

*Blinds Inc. v. Benjamin's Desk, LLC*, 206 A.3d 509, 512 (Pa.Super. 2019) (cleaned up). Standing presents a question of law, "thus, our standard of review is *de novo* and our scope of review is plenary." *S.G. v. J.M.G.*, 186 A.3d 995, 997 (Pa.Super. 2018) (cleaned up).

A party filing suit in a Pennsylvania court "'must establish as a threshold matter that he has standing to maintain the action.'" *Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)). "Unlike the federal courts, which derive their standing requirements from Article III of the United States Constitution, standing for Pennsylvania litigants has been created judicially."[4] *Id*. (citation omitted).

Specifically, in Pennsylvania there are two avenues for a litigant to establish standing: (1) by statute, which expressly prescribes the individuals who have standing to pursue a particular action thereunder; or (2) in the absence of such a statutory prescription, by satisfying the requirements of Pennsylvania's traditional standing doctrine. *See Milby v. Pote*, 189 A.3d 1065, 1076–77 (Pa.Super. 2018) ("These traditional standing requirements apply only when a specific statutory provision for standing is lacking.").

---

[4] In the federal context, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Accordingly, the Third Circuit has found that a purely technical violation of FACTA, without further injury by way of, *inter alia*, identity theft, does not confer Article III standing. *See Kamal*, *supra* at 117 (holding that "absent a sufficient degree of risk, J. Crew's alleged violation of FACTA is a bare procedural violation that does not create Article III standing" (cleaned up)).

We begin with an overview of statutory standing. "[W]here the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles." *Int. of K.N.L.*, 284 A.3d 121, 136-37 (Pa. 2022) (citations omitted). In these circumstances, "the question involved is whether the interest the plaintiff seeks to protect is arguably within the zone of interests to be protected by the statute. Accordingly, the answer to any question concerning statutory standing involves a careful analysis of the relevant statutory scheme." *Milby*, *supra* at 1077 (cleaned up). For example, the Child Custody Act expressly prescribes who may pursue an action thereunder. *See* 23 Pa.C.S. §§ 5324 ("Standing for any form of physical custody or legal custody"), 5325 ("Standing for partial physical custody and supervised physical custody").

In the absence of a statutory prescription, our traditional standing doctrine applies, which "is a judicially-created tool intended to 'winnow out' litigants with no direct interest in the matter, and to otherwise protect against improper parties." *Int. of K.N.L.*, *supra* at 136 (citation omitted). As our Supreme Court recently explained:

> The "core concept" of standing is that the litigant must be "adversely affected" in some way. Under this Court's precedent, the prerequisites to standing are satisfied where the complaining party's interest is substantial, direct, and immediate, meaning that the party's interest surpasses that of the general public in procuring obedience to the law, the harm alleged was caused by the matter complained of, and the harm is not remote and speculative.

*Trust Under Will of Ashton*, 260 A.3d 81, 88 (Pa. 2021) (cleaned up). "In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975) (cleaned up). Moreover, "[t]he doctrine of standing stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (cleaned up).

In the case *sub judice*, the trial court held that FACTA did not confer statutory standing. It further concluded that the Third Circuit's holding in *Kamal* regarding Article III standing in FACTA cases was not compelling since Pennsylvania does not adhere to Article III's concrete-injury requirement. Instead, applying Pennsylvania's traditional standing principles to the above facts, the trial court concluded that Plaintiffs had standing. *See* Trial Court Opinion (Country Fair), 8/20/20, at 8.

Kirkland's argument is simple: the trial court erred in finding that Plaintiffs had standing under Pennsylvania law where they have not suffered any actual harm. *See* Kirkland's brief at 35. Plaintiffs, on the other hand, contend that Kirkland's argument improperly restricts Pennsylvania's standing doctrine to the federal courts' Article III-based "'concrete injury' framework." Plaintiffs' brief at 22. Essentially, Plaintiffs contend that the trial court reached the correct result for the wrong reason. Relying on *Ashton*, *supra*, Plaintiffs argue that they **do** have statutory "standing to enforce an interest arising

- 7 -

purely out of law, irrespective of any 'actual' or monetary harm, subject only to the condition that the plaintiff personally possesses the legal right under which the cause of action is brought." *Id*. at 21-23. Thus, Plaintiffs aver that they did not need to meet Pennsylvania's traditional standing requirements and insist that "[g]iven [Plaintiffs'] clear qualification to bring a FACTA claim against Kirkland's, and Pennsylvania courts' clear concurrent jurisdiction to hear FACTA claims, this Court should rule that [Plaintiffs] have statutory standing[.]" *Id*. at 22-23, 28. Alternatively, Plaintiffs agree with the trial court's conclusion that they satisfied Pennsylvania's traditional standing doctrine. *Id*. at 29.

We disagree with Plaintiffs' contention that FACTA conferred upon them statutory standing. Notably absent from FACTA is a provision, like those in the Child Custody Act, delineating who has standing to pursue an action thereunder.[5] Thus, while FACTA includes liability provisions that create private rights of action, there is no standing provision that "expressly prescribes the parties who may pursue a [FACTA] action in Pennsylvania courts[.]" *Int. of K.N.L.*, *supra* at 136 (citation omitted). A statute setting forth a private right of action does not automatically confer standing. *See Jackson v. Garland*, 622 A.2d 969, 971 (Pa.Super. 1993) ("The law of standing provides that one cannot invoke the jurisdiction of the court to enforce private rights or to

---

[5] *Cf. also*, *e.g.*, 13 Pa.C.S. § 2A531 ("Standing to sue third parties for injury to goods"), 53 P.S. § 11701.202 ("The following have standing to request a determination of municipal financial distress from the secretary. . . .").

maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy."). As FACTA contains no standing provision, Plaintiffs may not invoke statutory standing to pursue their action in state court. Lacking statutory standing, Pennsylvania's traditional standing doctrine applies.

In finding that Plaintiffs had satisfied the traditional tripartite test, the trial court held as follows: (1) "Plaintiffs' interest far outstrips that of ordinary citizens in procuring obedience to the law, because it was Plaintiffs' personal information that was printed on the offending receipts[;]" (2) "there is a causal relationship between [Kirkland's] conduct and the harm to Plaintiffs' rights to enjoy the protections of FACTA" as a result of Kirkland printing receipts in violation of FACTA; and (3) "the causal connection has already occurred, and was complete when [Kirkland] tendered the allegedly illegal receipts to Plaintiffs[.]" Trial Court Opinion (Country Fair), 8/20/20, at 23. "Simply put, [Kirkland], by its lack of compliance with FACTA, caused the alleged harm to Plaintiffs' interests, and this cause-effect connection is neither too remote nor too speculative to escape adjudication in our courts." *Id*. at 24.

The trial court's conclusion amounts to a finding that the mere printing of a receipt in violation of FACTA, regardless of the severity of the violation, *per se* aggrieves a customer. We cannot countenance such a conclusion. While not binding, we find the analysis of the Third Circuit in **Kamal**, **supra**,

particularly pertinent to whether Plaintiffs were aggrieved pursuant to Pennsylvania's traditional standing doctrine.

By way of background, Kamal received three receipts from J. Crew, all of which included the first six and the last four digits of his credit card number. As a result of this alleged willful violation of FACTA, Kamal filed a federal class action suit. The District Court dismissed Kamal's complaint "because Kamal had alleged only a technical violation of FACTA and not a concrete injury[.]" ***Id***. at 109.

The Third Circuit reiterated that Article III standing requires, *inter alia*, an injury in fact. "To show injury in fact, a plaintiff must allege an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. The injury must be concrete in both a qualitative and temporal sense, and an abstract injury will not suffice." ***Id***. at 110 (cleaned up). Similarly, it recounted the United States Supreme Court's holding "that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." ***Id***. at 110-11 (cleaned up). Further, the ***Kamal*** Court recalled the Supreme Court's warning that "Congress cannot statutorily manufacture Article III standing in the case of a bare procedural violation, divorced from any concrete harm. Rather, a procedural violation must yield or risk actual harm to meet the requirements of Article III." ***Id***. at 111 (cleaned up).

In sum, the Third Circuit interpreted the Supreme Court's precedent as follows: "an alleged procedural violation manifests concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest. If the violation does not present a material risk of harm to that underlying interest, however, a plaintiff fails to demonstrate concrete injury." *Id*. at 112-13 (cleaned up).

Kamal alleged two injuries: the printing of the receipt in violation of FACTA and the increased risk of identity theft as a result of the printing. The Third Circuit held that "the procedural violation is not itself an injury in fact, and Kamal has not otherwise alleged a risk of harm that satisfies the requirement of concreteness." *Id*. at 113.

> Based on the plain text of FACTA, which requires truncation of all but the last five digits of a consumer's credit card number, we recognize Congress identified the violation alleged here. By creating a private right of action to enforce FACTA's provisions and allowing for statutory damages for willful violations, Congress has expressed an intent to make the injury redressable.
>
> But the Clarification Act also expresses Congress's judgment that not all procedural violations of FACTA will amount to concrete harm. The congressional findings underlying the Act are directed to the risk incurred by printing the expiration date when the card number is properly truncated. Though expiration date truncation is not at issue here, Congress's action to limit FACTA liability to those claims implicating actual harm accords with our understanding of Article III.[6]

---

6 By way of background, after FACTA's enactment "launched 'hundreds of lawsuits' based on receipts printed with expiration dates 'even where the account number was properly truncated,'" Congress passed the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"). ***Thomas v.***

*Id*. (cleaned up).

Kamal argued that Congress had found "all conduct prohibited by FACTA creates a sufficient risk of identity theft." *Id*. at 115 (cleaned up). Noting that the cited congressional findings related only to instances where retailers printed the credit card number in full on receipts, the Third Circuit rejected Kamal's argument and considered whether he set forth sufficient facts to show a particular risk of harm. *Id*. at 115 n.5, 116. Ultimately, it agreed with the District Court as follows:

> Kamal has alleged neither third-party access of his information, nor that the receipt included enough information to likely enable identity theft. Our analysis would be different if, for example, Kamal had alleged that the receipt included all sixteen digits of his credit card number, making the potential for fraud significantly less conjectural. Here, however, we agree with the District Court that this speculative chain of events does not constitute a material risk of harm.

*Id*. at 116 (footnote omitted) (explaining the chain of events as: "Kamal loses or throws away the receipt, which is then discovered by a hypothetical third party, who then obtains the six remaining truncated digits along with any

---

*TOMS King (Ohio), LLC*, 997 F.3d 629, 633 (6th Cir. 2021) (quoting Clarification Act, Pub. L. No. 110-241 § 2(a)(4)-(5)). Since proper truncation, irrespective of the inclusion of an expiration date, was found to protect against identity theft, the Clarification Act amended 15 U.S.C. § 1681n to refine the meaning of "willful noncompliance" in relation to the inclusion of expiration dates on printed receipts. In doing so, Congress explained that the stated purpose of the Clarification Act was "to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Clarification Act § 2(b).

additional information required to use the card, such as the expiration date, security code or zip code" (cleaned up)).

Thus, the Third Circuit held that "absent a sufficient degree of risk, J. Crew's alleged violation of FACTA is a bare procedural violation that does not create Article III standing." *Id*. at 117 (cleaned up). It further found that "[t]his result falls within the Supreme Court's admonition that when Congress adopts procedures designed to decrease the risk of harm to a concrete interest, a violation of one of those procedural requirements may result in no harm." *Id*. (cleaned up).

We now return to the instant case. As in *Kamal*, Plaintiffs have "alleged neither third-party access of [the] information, nor that the receipt included enough information to likely enable identity theft." *Kamal*, *supra* at 116. All Plaintiffs have alleged is the same interest of all customers in receiving receipts in compliance with FACTA, namely, that they be properly truncated when printed. Plaintiffs' speculative chain of events that the receipts placed them at heightened risk for identity theft solely based on their existence simply does not amount to an interest that is substantial, direct, and immediate, which our Supreme Court identified as the foundational

components of standing. **_See Ashton_**, **_supra_** at 88. Stated simply, Kirkland's conduct has not adversely affected them.[7]

Based on the foregoing, the core concept of our standing doctrine has not been satisfied and the trial court erred in overruling Kirkland's preliminary objection as to standing. Since we conclude that Plaintiffs lack standing under Pennsylvania law, we reverse the order overruling Kirkland's preliminary objection and dismiss the complaint.[8]

Order reversed. Complaint dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

---

[7] We observe that our holding aligns with Congress's intent that FACTA provide relief for consumers who suffer an "actual harm to their credit or identity[.]" Clarification Act § 2(b).

[8] Kirkland and Plaintiffs filed applications for post-submission communications asking this Court to consider supplemental authorities in our analysis. **_See_** Kirkland's Application for Post-Submission Communication, 1/17/23 (regarding **_Saleh v. Miami Gardens Square One, Inc._**, 353 So.3d 1253 (Fla.Dist.Ct.App. 2023)); Plaintiffs' Application for Post-Submission Communication, 1/18/23 (regarding **_Int. of K.N.L._**, 284 A.3d 121 (Pa. 2022)); Kirkland's Application for Post-Submission Communication, 4/7/23 (regarding **_Limon v. Circle K Stores Inc._**, 300 Cal.Rptr.3d 572 (Cal.Ct.App. 2022)). Those applications are granted insofar as we have reviewed these decisions and, to the extent we have found it appropriate to do so, incorporated the relevant authorities into our analysis.

Date: <u>5/16/2023</u>